## ALBANY OYER AND TERMINER.

### THE PEOPLE agt. MICHAEL CAVANAGH.

*Criminal law — Indictment for an assault with intent to do bodily harm with a sharp, dangerous weapon—Laws of 1854, chapter 74 — what conviction may be had — what is a sharp, dangerous weapon, within meaning of statute — question of fact — Intoxication no defense to crime.*

Under an indictment for an assault with intent to do bodily harm with a sharp, dangerous weapon (*chap.* 74, *Laws of* 1854), a conviction can be had of an assault, but not assault and battery.

What is a sharp, dangerous weapon within the meaning of that statute, is a question of fact.

The weapon used must be sharp as well as dangerous, and if not a knife, dirk or dagger, it must be similar to one of them, that is, one which will inflict a similar wound.

Intoxication is no defense to crime.

*October Term*, 1881.

THE prisoner was indicted for an assault with intent to do bodily harm to one Michael Durand, the weapon used was alleged to be a horseshoe.

The particulars of the assault are stated in the charge.

The prisoner was a man about forty years old; in infancy he was injured in the head by a horse kicking him, a depression an inch long and half an inch deep existed in his forehead over his left eye, as the result of said injury. It was claimed that his mind was weak and when he drank liquor he became wild and delirious, and that this was his condition when he assaulted Durand.

*Edward J. Meegan*, for prisoner.

I. The prisoner is indicted under chapter 74 of the Laws of 1854, which provides that "any person who, with intent to do bodily harm and without justifiable or excusable cause, shall hereafter commit any assault upon the person of another with any *knife, dirk, dagger or other sharp, dangerous weapon*," &c., &c. (*a.*) The construction of this statute limits the general words "or other sharp, dangerous weapon," to a weapon similar to the three particularly specified, and a horseshoe is not such a weapon. "This doctrine is in part the foundation of the celebrated rule that, where particular words are followed by general ones, as if after the enumeration of several classes of persons or things the words are added 'and all others,' these general words are restricted in meaning to objects of the like kind with those specified, therefore under *Stat.* 29, *Cas.* 2, *c.* 7, § 1, providing 'that no tradesman, artificer, workman, laborer or other person whatsoever, should exercise his ordinary calling on the Lord's day,' the words 'other person' were held not to include a farmer, who is not a person of the like denomination with those specifically mentioned, for as BAYLEY, J., said, if all persons were meant there was no need of enumeration. And when a statute employed the words 'wherry, lighter or other craft,' the word 'craft' was held not to include a steam tug, because, although a steam tug is a craft yet it is not of the same character as a wherry or a lighter" (*Bishop on Stat. Crimes*, sec. 245 ; see *Sedg. on Stat. and C. Law* [*Pomeroy's ed.*], 360 *n*). (*b.*) The court of appeals in construing the statute which exempted from taxation "every building erected for the use of a college, incorporated academy or other seminary of learning," &c., held that the general words did not include a private boarding school, as general words following particular words apply only to things *ejusdem generis* (*Chegary* agt. *The Mayor*, &c., 13 *N. Y.*, 220–9). (*c.*) The following cases illustrate the rulings upon the statute in question and similar ones: *Foster* agt. *The People* (50 *N. Y.*, 604), the case of the car hook

murderer, ANDREWS, J., says, "And the act relates to assaults only and with an instrument different from the one used by the prisoner." *Slatterly* agt. *The People* (58 *N. Y.*, 356), a policeman had been convicted for assaulting a prisoner with his club, CHURCH, Ch. J., said, " It may have been, and probably was, assumed that the facts did not justify a conviction for that offense on account of the character of the instrument. *People* agt. *White* (55 *Barb.*, 606, 608, 611), " clubs, sticks, staves, bricks and stones, and iron bars," were held not within the statute. *People* agt. *Hickey* (11 *Hun*, 631), "An iron stove griddle or cover, a club and a chair," held not within the statute. " We have no doubt," says LEARNED, J., " that the statutory offense must be an assault with a sharp as well as with a dangerous weapon." *Filkins* agt. *The People* (69 N. Y., 101), the handle of a pitchfork, the tines not being used, not within the statute. *Com.* agt. *Hawkins* (11 *Bush.* [*Ky.*], 603; 1 *Hawley's Am. Crim. Rep.*, 65), blacksmith's tongs held not within the statute.

II. Under the indictment the defendant cannot be convicted of assault and battery. (*a.*) The statute makes an assault with a certain kind of a weapon a crime. The term battery is not used in the statute. As throwing some light on this question, attention is called, that in the statute describing the offense of an assault with intent to kill, both words " assault " and " battery " are used (3 *R. S.* [*6th ed.*], 938, *sec.* 46). (*b.*) The words " assault" and " battery " each have a well known meaning at the common law, and in construing a statute the legislature is presumed to have used the words according to such meaning (6 *Bacon Abs.*, 383; 6 *Modern*, 143; 1 *N. Hampshire*, 555, 556; 4 *Gilman*, 205; 8 *Iredell*, 147). (*c.*) An assault is defined " an attempt, or the unequivocal appearance of an attempt, with force or violence to do a corporal injury " (1 *Arch. Cr. Pl. and Pr.*, 907 *n.* [*Pomeroy's ed.*]; 2 *Bish. Cr. Law* [*2d ed.*], *sec.* 32). "An assault means something less than actual contact " (*Bigelow's Lead. Cases of Torts*, 230). A battery is defined: "Any

unlawful touching of the person of another " (1 *Arch.*, *supra*, 911 *n.* ; 1 *Bish.*, *supra*, *sec.* 62). (*d.*) If the legislature intended to include a battery in the offense created, it would have so said and made use of that term or an equivalent one. *Young* agt. *People* (2 *Week. Jurist*, 239, 240), sustains our view. The court said : " But it is manifest that the misdemeanor described in the statute is ' an assault with a deadly weapon, instrument or other thing with an intent to inflict upon the person of another bodily injury, where no considerable provocation appears, or where the circumstances of the assault show an abandoned or malignant heart' (*chap.* 38, *sec.* 25), may be complete without a battery, as by shooting at but missing the object of the assault. An indictment for this offense then need not charge a battery. In this case it does not in either of the three counts, but an assault only, with the circumstances required to bring it within the statute, an assault being a different offense from an assault and battery (*R. S.* [1847], *chap.* 38, *secs.* 20, 21 ; *Carpenter* agt. *The People*, 4 *Scam.*, 199), and not necessarily including it, an indictment for the former will not support a verdict finding the latter " (1 *Crim. L. Mag.*, 660).

III. An assault and battery having been shown, there can be no conviction for an assault because the battery merges the assault. (*a.*) *Washburn* (*Crim. Law*, 27) says : " The one (an assault) is an attempt or offer to beat another without touching him, the other (battery) is an unlawful beating of another, and the least touching of another's person willfully or in anger is a battery." Judge COOLEY says : "A successful assault becomes a battery " (*Cooley on Torts*, 162). " So an assault and battery committed at the same time is considered but as one defense, and may be so charged, yet an assault not followed by a battery is an offense, but if so followed the assault is merged in the battery " (*Com.* agt. *Eaton*, 15 *Pick.*, 275).

*D. Cady Herrick*, district-attorney, and *John A. Delehanty*, assistant, for the people, argued that what was a sharp, dan-

gerous weapon was one of fact to be submitted to the jury, citing *Nelson* agt. *The People* (23 *N. Y.*, 293; *S. C.*, 5 *Park,* 39). They combatted the other questions raised.

After the arguments the prisoner's counsel requested the court :

1. To direct the jury that, it appearing from the evidence that this assault was committed with a horseshoe which is produced, an ordinary horseshoe produced here, they would not be authorized to find the defendant guilty under the indictment of the offense charged in the indictment. Denied.

2. To hold that under the statute with regard to assault with intent to do bodily harm, that the sharp and dangerous weapon mentioned in the statute must be one of a similar character to a knife, dirk or dagger.

THE COURT — I will hold that proposition.

3. To instruct the jury that this horseshoe is not an instrument similar to a knife, dirk, dagger, or other sharp, dangerous weapon.

THE COURT — That I will submit to the jury under such instructions as I think proper.

4. To hold that as there is no count in the indictment for assault and battery upon the evidence, there can be no conviction here for assault and battery.

THE COURT — I hold that under this indictment the jury may convict of the lesser offense, an assault, if they find the higher offense charged is not maintained.

5. To hold that as a battery has been shown, the offense of assault is merged and extinguished in the battery, and therefore there can be no conviction under this indictment.

THE COURT — I decline to hold that as matter of law.

DEFENDANT's COUNSEL — Does the court hold that under this indictment the prisoner may be convicted of a simple assault ?

THE COURT — I hold they may convict of it if the evidence warrants of it, an assault. I do not go so far as assault and battery, but simply an assault.

OSBORN, J., charged the jury as follows:

*Gentlemen of the jury.*— In 1881, in June, on the eigh-teer⁺ʰ day, Mr. Durand, who was living in this city, and by occupation a tailor, as he claims, was in his place of business and attending to his business, and in that business was assisted by this lady who has been put upon the stand, Miss Finn. He says on that occasion the defendant came into the room by a back door without any notice, came in in a violent way, approached the place where he was at work and struck him a blow which partly felled him, and then that in undertaking to defend himself, he seized this board which has been spoken of, when the defendant grabbed this horseshoe which has been produced in evidence and struck him several violent blows upon the head and about different parts of his person.

It would seem, if we are to believe the testimony, and there is no dispute about it, that Mr. Durand was considerably injured upon that occasion at the hands of the defendant. He remained in the hospital for three or four weeks, and his physician is here who testifies that there were a large number of cuts upon his person that he discovered in attending him, so, perhaps, you will have no trouble in arriving at the conclusion that there was considerable degree of violence employed by the defendant on that occasion, and that Mr. Durand was, to a considerable extent, injured in consequence of what took place there.

If this were a simple indictment for assault and battery, you would, perhaps, have little trouble in arriving at a conclusion, but the grand jury have seen fit, in the discharge of their duty, to indict for a graver offense than assault and battery. They have indicted this man for an assault with a sharp, dangerous weapon, intending to do bodily harm, and the first question which arises here is whether this is such an instrument as is fairly embraced within the meaning of this section of the statute. (The court read the statute.) It must be a knife, it must be a dagger, or it must be another sharp

and dangerous weapon, and that instrument, I am bound to charge you, as I have been requested to do, if not a knife or dagger, must be something of the nature of these instruments. We all know what a knife is, that it is a sharp, dangerous instrument. We all understand what a dagger is, and there are other instruments of a sharp, dangerous character, and an offense committed by those would be an offense by this statute as well as if committed by a knife or dagger; but it must be of the same character, that is, they must be sharp and dangerous, that is, naturally producing the same or similar results as those produced by the instruments mentioned in this statute.

It is difficult to hold, as matter of law, what is or what is not a sharp, dangerous instrument in the meaning of this statute. If it was a knife there would be no difficulty in saying it was fairly embraced in the meaning of the statute. If it was a dagger there would be no difficulty in determining that question, and if it was a sharp instrument, though not a knife or dagger, an instrument like a hatchet or ax, there would be no trouble. But I have concluded to leave it as a question of fact for you, judging from this testimony, from the manner in which the injury was inflicted, and the description of the physician and other witnesses, whether this is or not such a sharp and dangerous instrument as is embraced in the terms of this statute. If so, and you believe the injuries were inflicted, as the complainant claims and this lady swears, without excusable or justifiable cause, and unless the defendant is shielded from responsibility for another reason, to which I will presently call your attention, then the offense as charged in the indictment is made out.

But if you conclude it would be straining the evidence to hold that, although the horseshoe has inflicted injuries similar to those which could be inflicted by a knife or dagger, yet if it is straining a point to say this is an instrument fairly within this statute, I am inclined to charge you that if you shall conclude that this greater offense as charged in the indictment is not proved, that you cannot and will not convict for any

other or greater offense under' this indictment than an assault simply.

The proposition is a doubtful one and I prefer not to have it in the case. If an offense has been committed, and is simply an assault within the meaning of the law, it is an offense for which he can be punished, and the law vindicated and justice maintained.

You are to determine this in the light of this testimony, not with any feeling against this party, but with the simple desire to arrive at the truth.

It is impossible for the court to charge that this is or is not a sharp or dangerous instrument in the meaning of this section, but it is left to you. But it is urged upon the part of the defense that this man should be acquitted entirely; that on that occasion he was not in such a state of mind as to be responsible for his act. They do not claim he is insane, but it is urged that upon that occasion he was in such a state in consequence of injuries he had received earlier in life, and having partaken of liquor; that he did not know what he was about; that he was wild, insane and in no manner responsible for the acts he committed.

It is for you to say whether you are prepared under this evidence to say that a man shall escape from an act so serious in its consequences as this. If you believe the injuries were sustained by complainant, it will be for you to say whether you will establish a precedent that a party may go free under such a plea and the evidence given. If you believe the offense charged in the indictment has been proved, that this was a sharp and dangerous instrument, and this man is not to be shielded from responsibility because of his condition as claimed, then you find him guilty as charged in the indictment.

If you believe this was not a sharp and dangerous instrument, and he was guilty of an assault, then find him guilty of an assault.

Prisoner's counsel asked the court to charge that if the jury have a reasonable doubt as to the character of the instrument,

The People agt. Cavanagh.

as to its being similar to a knife or dagger or dirk, they are bound to hold he is not liable under the statute.

THE COURT — Yes.

Also, that the instrument must be sharp as well as dangerous.

THE COURT — Yes.

Also, and similar to a dirk or dagger or knife.

THE COURT — Yes.

Also, that the element in this crime is the mental one of the intent to do bodily harm.

THE COURT — Yes, but that they are to infer though in the light of the evidence and the act itself.

Also, that if the prisoner was in such a state of intoxication as not to understand the nature of his acts, the jury have the right to consider that fact on the question of intent.

THE COURT — I have charged that if this prisoner, when he committed the act, was in such a state of mind as not to know the character of the act he was doing, and not to know the difference between right and wrong, then he would not be responsible for his act.

Also, that the battery having been proven, any assault is merged into the battery, and there can be no conviction for assault.

THE COURT — I decline.

The district attorney asked the court to charge that the intoxication is no defense.

THE COURT — No, it is not.

THE DISTRICT ATTORNEY — By similar is not meant similar in shape.

THE COURT — No.

THE DISTRICT ATTORNEY — But one which will inflict a similar wound.

THE COURT — Yes. One dangerous in its character, and one that will produce similar injuries to those of a knife or dagger.

Prisoner was convicted of a simple assault with a recommendation to the mercy of the court.